Good morning. Jolie Lipsig, appearing for appellant. Robert Fenenbock, and I'd like to reserve two minutes for rebuttal. You may do so, counsel. Just watch the clock. Thank you. Mr. Fenenbock is currently serving a life sentence in state prison for a murder that he did not commit. He wasn't convicted on the basis of facts or physical evidence, but rather on the fabrication made up by a young boy, Randy Hohgraf, at the behest of a CPS social worker for a period of several years. Before the trial, Randy Hohgraf was coached, cajoled, and pressured into testifying that he saw Mr. Fenenbock and three other men stab Hopp Sumar. Despite Randy's multiple inconsistent stories and the lack of forensic support for his testimony, the prosecutor chose to rely on a little boy to build a case against Mr. Fenenbock. The trial court committed three errors regarding Randy. First of all, it denied the defense all access to Randy before the trial, while allowing the prosecutor to meet with Randy multiple times, both before and during the trial. Even in the middle of Randy's testimony on direct exam. Counsel, we're here on habeas, so we need to look at it from that standpoint. What is the constitutional violation that you are focusing on here? I'm going to focus on the confrontation clause violations. There were two of them, Your Honor. And the state court's opinion upholding Mr. Fenenbock's conviction on both of those issues did not comport with clearly established federal law. Well, was there any interference by the DA in allowing access? No, Your Honor. But it was the constellation of errors together that really served to deprive Mr. Fenenbock of a fair trial. I'd really like to talk about the confrontation clause errors. I think they were compounded. The prejudice was compounded by the trial court's denial of access to Randy. But the constitutional violations are squarely under the confrontation clause. Well, now, wait a minute. You say the court denied the access. I thought that the witness declined to be available. He was under the custody of CPS social workers, and they... In total parenthesis, I assume. Yes, Your Honor. The trial court, we deferred completely to their judgment. It was them, they who decided not to allow the defense access. Counsel, what Supreme Court case or other principle requires a witness, whether juvenile or adult, to speak to the defense lawyer ahead of trial? There's general case law from the U.S. Supreme Court that a witness doesn't belong to one side or the other. And the problem is here... I guess that was sort of a maybe an oblique question, but I guess I am not aware of any case that requires access to an unwilling witness by defense counsel before trial. Are you aware of any case that requires that in the absence of the government making the person unavailable? No, Your Honor. But in this case, the CPS workers were squarely aligned with the prosecutor. I do think, however, the confrontation clause violations are more serious here. And so I would like to address those, if I might. Because I think, as I said, the denial of access caused Randy to become very uncomfortable on cross-exam. And then the trial court punished Mr. Fennenbach by cutting off the cross-exam, based solely on the fact that Randy was fidgeting on the stand. Well, the court limited the time for cross-examination. And what was the limitation that was placed? Trial counsel estimated he would need two days to complete a cross-exam of Randy. And how much time was he given? He was given approximately a half a day. And he didn't use all that time, Your Honor, because he had to change his strategy. He had planned to go through the trial, but Randy had given 17 interviews. Well, let me go back to the earlier question in terms of what the Supreme Court requirements are under the confrontation clause. Is there clearly established law that half a day of cross-examination is unduly restrictive, or that would mandate a state finding that that was a violation of the confrontation clause? There is no case from the Supreme Court specifically discussing time limits, but the parameters of the Constitution are very well established. The court has to ask two questions. First of all, this is the reviewing court now, because that's what you're looking at to decide whether the California Court of Appeals decision was unreasonable here. The California Court of Appeals did not apply the constitutionally required tests. The first test is, would the Constitutionally Required Tests apply the Constitutionally Required Tests? The second test is, would Randy's cross-exam be likely to result, well, not even likely, might it result in the jury having a different impression of the witness' credibility? And the answer in this case would be yes, cross-exam could have forced Randy to admit that he had heard facts about the crime, particularly the location of the stab wounds from other people. It also could have caused him to realize he was conflating a real trip that he took in the car with Mr. Fennenbach and the co-defendants with an imaginary trip to the murder. We're on habeas here, is that correct? Yes, Your Honor. Are there any affidavits or anything else that would indicate that the witness may have been confused and that he might have said something different? In my excerpts of record, it's in volume two, the first document is a declaration that was submitted to both the state court and the federal court by an expert that goes through Randy's statements in detail and shows exactly how he was coached, exactly where he made things up. I mean, he said he was making things up over and over. But I did want to get back to the constitutional standard because I think that's very important here. When you're talking about the confrontation clause issue, what violation of the confrontation clause is it? There's two of them here. The court made two errors, as I started saying. It first restricted cross-exam, which the trial court may do, has great latitude, but it can't be arbitrary. Trial counsel said he needed two days, and the court said, well, I'm going to give you to the end of the day. And counsel said I can live within that and used less than the time allotted. It did, but later on in the record, Your Honor, there's many examples where the district attorney brings that up and the trial court says, no, I recognize counsel had to just change his strategy. I'm not going to fault him for not going forward. Beyond this, he changed his strategy. But the second confrontation clause violation I think is even more clear here. That's the preclusion of directly relevant impeachment evidence. After telling counsel he couldn't complete cross-exam, the trial court then said, and you can't present this other evidence that you have that might impeach Randy. The court found it relevant. It didn't find it cumulative because it told counsel this is collateral and it's going to be time-consuming, but if you can find something else on this point, feel free to present it. It recognized it wasn't cumulative. The state court of appeal, though, said it was cumulative. Now, the important thing to note here is that this is not a collateral issue. Yes, it's really important, though, to put this in context. The prosecutor, what happened was Randy, when he was on cross-exam, every time he was confronted with an inconsistent prior statement, he said, oh, if I made that statement when I was nine years old, I was lying. But now I'm 11 and I tell the truth. Well, the impeachment evidence that was precluded was exactly to show that Randy had very recently told a lie to his therapist who also bolstered his credibility by saying she knew when he was telling the truth. She didn't dispute it. She didn't investigate. She reported his accusation to the authorities. And it was later determined that it was false. That's the only evidence counsel had to go to the heart of the prosecution's argument, which was Randy lied when he was little, but he's telling the truth right now. He doesn't lie now. He's learned his lesson. And the state court of appeal did not apply the constitutional test. It didn't balance Mr. Fennenbach's right to present this evidence against the interest in keeping out collateral matters from the jury. Second, it's finding that it was collateral, and too time-consuming, was based on the prosecutor's representation, that he was going to put on all this evidence to challenge it, it would turn into a mini-trial. But the trial court could have held a hearing. And should have. But it also reasoned, as I recall, that part of the reason for disallowing this was that there were already so many inconsistencies in the child's testimony that could be relied on to argue unreliability to the jury. In other words, that the prejudice from this was not great. I think I need to stop, but I do want to answer your question. There was no other evidence. You may answer the question. You are over time, but you may answer the question. I see that, Your Honor. There was no other evidence to show that Randy lied now. He admitted he lied in the past. There was plenty of evidence to show that, absolutely, but this specific impeachment evidence went directly to the prosecutor's argument that he was telling the truth. Now. He was consistent on the stand. All right. Thank you, counsel. You have used all your time. Yes, I understand. We'll have argument from the director. Good morning. May it please the court, Glenn Pruden on behalf of the director. I don't think that the court needs to be concerned so much with what Ms. Lipsey started out talking about to the effect that Mr. Fennenbach somehow is an innocent man. His actual innocence claim was presented to the district court, soundly rejected by the district court in its opinion, and no certificate of appealability was granted on that. So really, what we're here today on are three Sixth Amendment confrontation clause issues, which are very narrow in their scope. And with regard to the first one, access to Randy, I don't think that, again, this court needs to spend much time on it, and I don't intend to, because opposing counsel has already conceded that there is no Supreme Court precedent that shows that there is a right to access to a witness, to have access to a witness. Well, there is also, though, a right not to have the prosecutor prevent access to a witness. And there's no proof, Your Honor, that the prosecutor did anything to prevent access to Randy. Well, let me ask you this. Randy was in the legal custody of whom at the time that this was happening? He was in custody of the Child Protective Services. And they are not an arm of the prosecution, Your Honor. Right. It would be the same as me. I understand. You know, if my child, if Randy were my child, and I didn't want him to talk to the defense counsel, I would have... I understand that. I'm just trying to figure out, where was he living? Was he with a family? Was he... I... The record really isn't very clear on that. No, Your Honor, and I'm not clear on where he was living at that particular time. I know eventually he was placed in a series of foster homes, if one reads his testimony, that he was in several of them over the course of these three trials. But the exact timing of all of those different placements, I... And the CPS agents were responsible for his well-being? That's correct, Your Honor. There was a guardian at Leiden who was officially appointed, as well as there were, I believe, one or two other therapists that were working with Randy, trying to get him over the emotional problems. Who was the guardian? I believe the guardian was Sally McFall, and the other therapists were Donna Gordon.  She also did some of the therapy, I believe, but it was mostly Donna Gordon, I believe, who was the prime therapist. Okay. Again... It gets a little murky, then. It does, but... Whatever they are, they were the prosecution. It's really a collateral issue to this. With regard to the time limit, the trial judge... The Confrontation Clause does not preclude a trial judge from imposing reasonable limits on cross-examination. It can be based on many reasons. For example, harassment of a witness, undue prejudice of the subject matter that might be sought to be explored, confusion of issues, repetition, marginal relevance, witness safety. What the Confrontation Clause does guarantee is an opportunity for effective cross-examination. That doesn't mean cross-examination that is effective in whatever way and to whatever extent a defendant or a defense counsel might wish, but simply have a chance to probe the credibility of the witnesses on the stand. And the trial judge was reasonably concerned with Randy's well-being, and that's documented in the record. He was observing Randy's reaction on cross-examination, and so he looked at the type of cross-examination that defense counsel was attempting, and he sought out what type of cross-examination defense counsel contemplated, and he said, I'm going to place some time limits. Now, Randy was on the stand the afternoon of one day, and when he retired, the trial judge said, let's take a recess, everybody agreed to that, brought him back the next morning. The cross-examination continued, and at some point late in the morning, it appears from the record, the trial judge said, I'm going to place some limits on you, and I'll give you to the end of the day. Well, as it turns out, defense counsel wrapped up his cross-examination, as best I can tell from reading the record, prior to the noon recess. And prior to wrapping up, the trial judge said, I want to make it perfectly clear to you, you've got until the end of the day to carry out your cross-examination, and you understand that, and he acknowledged that, and basically, he cut it short. If we look at the trial record, it shows that Mr. Maloney's direct examination, including his redirect, took up 84 pages. His direct examination was 59, and his redirect was 25. The cross-examination by Mr. Dippery, who was Mr. Fennenbach's counsel, took a total of 107 pages. So he's already exceeded the number of pages, and presumably, time-wise, he exceeded what the prosecution used on direct examination. And I think it's also interesting to look at the cross-examination that was done of Randy by the other two co-defendants at Mr. Fennenbach's trial. They each, their counsel each took two pages of the record to do cross-examination. And even when we look at the McCarley trial, which my opponent seems to want to make a lot out of, the cross-examination there for one of the defendants was 11 pages. Mr. Dodd's cross-examination was 4 1⁄2 pages. And the cross-examination, where I believe it was Mr. Bond, his counsel took 9 1⁄2 pages. Counsel, before you run out of time, would you address the final issue on the proposed impeachment evidence to show a present fabrication? Yes, Your Honor. As the State Appellate Course correctly found, there was plenty of evidence already before the jury that Randy had made numerous inconsistent statements. Those inconsistencies were brought out during the cross-examination, live cross-examination on the stand not only of Randy, but it was also brought out in either cross-examination of the law enforcement personnel who testified, as well as the child protective services personnel who testified. Also, the issue of whether or not child protective services working with Randy somehow coached him and taught him what to say, and the same thing with law enforcement. That was all thoroughly explored. Randy's brother, Ryan, testified that he didn't believe Randy's story. Randy's father and stepmother testified that they didn't find Randy very believable on many occasions. And this was essentially a collateral issue. There was no concrete proof that Randy had, in fact, lied. And so this matter would have had to have been fully explored, and Mr. Maloney told the trial court that he intended to do that if Mr. Dippery was allowed to go into that type of cross-examination. So the question before this Court is, was the State appellate court's determination that there was no Sixth Amendment violation by precluding Mr. Dippery from going into this unreasonable decision under the Sixth Amendment? And I say that it certainly was. Subject to any other questions that the Court might have, I'm willing to submit at this point. No further questions. Thank you, counsel. The case just argued will be submitted for decision.
judges: Schroeder, O'scannlain, Graber